And we'll hear first from Ms. Burke. Thank you, Your Honor. My name is Lori Burke. May it please the Court, I'm here on behalf of the City of Phoenix and Anthony Armour Appellants. I have a tremendous amount of respect for Judge Bolton, but I have to say in this ruling, with the exception of granting the motion for summary judgment as to retired Chief Yonner and Chief Williams, she got this wrong. Officer Armour is entitled to qualified immunity on both prongs of the analysis as a matter of law based on the undisputed material facts. At what point was the process, I mean, so there's a determination made that's adverse to him. And then there are steps in the process and at the final step, he doesn't appeal. When was that process completed? The investigation was complete upon completion of any appeal rights stemming from the disciplinary action. And if you look at the Arizona Peace Officers Bill of Rights statute, ARS Section 38-1109, Subpart A is discussed in our materials that talks about an employer not being permitted to publicly disclose any information about an investigation until that is complete. Subpart B of that statute provides that if the law enforcement officer has timely appealed a action, the investigation is not complete until the conclusion of the appeal process. So what that says is that it's complete once the disciplinary process is complete, unless the officer appeals that disciplinary process, in which case it's not complete until after that appeal has run. He intended to and wanted to, but there was apparently misunderstandings of the appeal process. He did not appeal. My colleague's question is, can you give us the date on which he did not appeal? The date would have been 14 days after November 14th of 2016, so November 28th. Before or after the trial of Ms. Salazar. And what's the event? You said 14 days after November, and I didn't catch the date. Sure. The disciplinary notice was served on November 14th of 2016, and then Officer Armour had 14 days thereafter to file an appeal. The disciplinary notice, though, is separate from the hearing that's alleged to be the Brady fact here. I'm sorry, I didn't understand the question. Was there some finding before the November 14th disciplinary notice? Yes, so the factual findings were complete in April of 2016. Those are factual findings. And what is the process that occurs between the factual findings in April and the disciplinary notice in November? I'm sorry, PSB concluded its investigation in April, but the notice of findings was signed on June 30th of 2016. Yes, so I apologize for that mistake. And then following the notice of findings being issued and signed by Officer Armour, then it goes to the disciplinary review board. In September of 2016, the DRB recommended that Officer Armour receive an 80-hour suspension. And that's September, you said? That's September of 2016, so again after her trial. August of 2016. At some point, some arm of the justice system in Arizona determined that the results of this disciplinary process was Brady material, correct? At some point, it was determined that it was Brady material, yes. And as a result of that Salazar's defense counsel? It was turned over by the Professional Standards Bureau of the City of Phoenix. I didn't ask you how to build a clock. It was turned over to the defense counsel, correct? It was turned over to defense counsel, yes. And the defense counsel filed a motion for a new trial? Correct. And what was the state's response to that? The state did not oppose their request for a new trial. In fact, they joined in not only the determination she was but to issue an exoneration, correct? She was not exonerated. They dismissed the charges, but she was never determined to be innocent. They just decided not to pursue a new trial. The court granted her a new trial, and then the state dismissed the charges. So this is not a case where the defense is to the criminal case is arguing that it should or should not have been Brady material. No. The state itself determined it was Brady material. Correct. And the state is who makes that decision. So there's a review process once there are sustained findings of misconduct of a police officer at the City of Phoenix that the responsibility for making a determination as to whether to submit it to the prosecutor for Brady determination is delegated to the Professional Standards Bureau and specifically the lieutenant within the Professional Standards Bureau. That's outlined in the bureau manual. And so the lieutenant reviewed this misconduct investigation and the results and recommended that it be forwarded to the prosecutor, and it was. When the disciplinary process was fully complete and the information that you're describing this process, when was that after the trial? How long after the trial? That was in December 28th. So it was 190 days. November, December. 120 days approximately. Okay, so meanwhile Salazar in state prison serving a six-year term. Correct. It was a few weeks after her sentencing. There's a traffic stop and she's a passenger, Salazar, right? Correct. And drugs were found in the car. And at trial Armour said she said these were my drugs, right? Yes. But there's a disciplinary finding that this particular officer has written false reports. One. Okay. Lied to superiors. In the same incident. Correct. Made a false arrest. Correct. What explains the delay with someone sitting in prison that the state ultimately determined is entitled to a new trial? Because the investigatory process has to be completed. The investigatory process was complete, you just told me, after 120 days. Right. But in order to bring a civil claim for this Brady violation, there has to be deliberate indifference. And there was no deliberate indifference here. There was a process in place that was performed exactly how the prosecutor's office had requested and it had always been done, the timing of it. And in 2020, four years later, when the county attorney informed the city that they wanted it to receive disciplinary reports after the findings are complete, it changed. But there was no deliberate indifference. You have to have that additional element in order to prevail on a violation. It's not just that there was a Brady violation, but the Brady violation, there was no Brady violation by Officer Armour because the responsibility for making this type of disclosure was delegated to the Professional Standards Bureau. When did the prosecutor in the Salazar drug case become aware of this material? In January of 2017, when Officer Armour was added to the Brady list, the Rule 15 database. And this is when the prosecutor asked the city of Phoenix to produce the information? No, it was a few years later that a different person within the city of Phoenix, I'm sorry, within the county attorney's office said, we'd like to start getting these findings of misconduct once the facts are final, which is when the findings are signed, notice of findings are issued and signed. And the notice of findings were signed when? In this case, it was signed in June of 2016, June 30th of 2016. But that's an advance of the trial. That is correct. But back at this time, and consistent with the Arizona Peace Officers Bill of Rights, the investigation wasn't considered final until the whole disciplinary process had been completed. And so it was promptly provided to the county attorney's office once that process was completed. Can a state statute like the Arizona Police Officers Bill of Rights override Brady responsibilities? No, but it can create a basis for finding that qualified immunity applies. Would it be reasonable to every police officer that, or would every reasonable police officer believe that he or she had a responsibility to disclose a finding of misconduct prior to? I don't think any part of the claims here are addressed to Officer Armour personally, or in his capacity as Phoenix Police Department. Yes, they are. A law enforcement officer, they're aimed at the prosecutor, the city of Phoenix, etc. And why something that the state ultimately found so convincingly Brady material that they agreed that Salazar was entitled to a new trial. Count 1 is a Section 1983 claim against Anthony Armour in his individual capacity. So plaintiff is claiming that Officer Armour wrongfully failed to disclose the report of misconduct to the county attorney. And that has been delegated. There's no clearly established law that the court addressed the clearly established prong at much too high of a level of generality. The court did not cite a single case involving police officer misconduct, the timing of disclosure of reports of police officer misconduct. And so how would a reasonable police officer know that there was a requirement to disclose it at any earlier time? There was no law to put officers on notice. This is how... If the court disagrees with you on the Brady violation and affirms the district court, then the court here has to affirm on the Monell decision, correct? And conversely, if we agree with you, that eliminates any possibility of bringing a Monell claim. Or if the court affirms on the Brady violation, then the court should decline jurisdiction to rule on... Pendant jurisdiction to rule on the associated Monell claim. Both go back then. Right. Okay. Do you want to save time for... I would like to, yes. Thank you. All right. Then we'll hear next from Mr. Rundle. Did I pronounce that correctly? Yes, you did, Your Honor. Thank you. Okay. Good morning, Your Honors. May it please the court, Benjamin Rundle for Appellee Frances Salazar. Your Honors, Judge Bolton correctly determined Miss Salazar, a grandmother who spent two years in prison because of a dishonest officer's suppression of impeachment material, presented genuine issues of fact for trial as to both of her claims. Accordingly, this court should affirm the district court's denial of summary judgment for two reasons. First, appellant's arguments go beyond a question of law and inappropriately challenge the sufficiency of plaintiff's evidence, which is not reviewable by this court pursuant to Johnson v. Jones. But even if the issue were properly before the panel, the record below supports a triable issue. The City of Phoenix Police Department's lack of training and supervision was at the heart of Miss Salazar's constitutional deprivation, and that Officer Armour acted in reckless disregard of Miss Salazar's right to a fair trial. We have jurisdiction over the Monell piece of this. I mean, the interlocutory review of a denial of emotional summary judgment is tied to qualified immunity and maybe any issues that are inextricably intertwined, but I don't see how Monell issues, you know, apart from the common issue of liability, any further issues about policy would be reviewable. Your Honor, I think that's correct. And here I would just point back to the district court's order, which said when reviewing the record in Salazar's favor, there are questions of fact whether the PPD made a deliberate or conscious choice. So I think in terms of reviewing the order and looking clearly at Johnson v. Jones for the Monell issue specifically, where is the neat issue of law? I'm going to quote from Johnson if I may, Your Honor. A defendant entitled to invoke a qualified immunity defense may not appeal a district court summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of material fact. It doesn't mean, Johnson does not mean that if the district court says that there is a material issue of fact that therefore the order isn't reviewable, it means that you can't appeal it on challenging that particular ground. But there are plenty of cases where even though that is said, we can nonetheless address the legal issue, whether taking the facts in the light most favorable and assuming the disputed issue of fact is resolved in favor of the appellee was there nonetheless qualified immunity. So Johnson isn't as big an obstacle to asserting review in these cases as I think you're contending it is. Judge Collins, I would agree with that assessment. And I would say that even if we turn to the Monell claim, I think that the disputed material facts here do weigh to whether or not a jury could find that the city acted with deliberate indifference. And if I may... But, you know, the qualified immunity is with respect to armor. And so I don't see how those issues really overlap with anything with the Monell. So it seems to me that there's no jurisdiction, but it's not because of Johnson. It's just because denials of summary judgment to cities in 1983 cases are not appealable because it's based on qualified immunity and qualified immunity doesn't apply to the city. That's correct, Your Honor. We would absolutely agree with that interpretation. And I think moving, Your Honor, to clearly established... With respect to armor now? With respect to armor, Your Honor. I mean, the problem there is, you know, we're not talking about something like he, you know, there was a confession from another person that he hid or there was a fingerprint of another person and he filed it away in the wrong drawer. Something that's obviously... What we have is his own conduct, which he, you know, at some level has disputed and a finding is made in the course of a process. So what's the clearly established law that says that at the first point in the process that there's something negative, it's Brady, as opposed to it's Brady at the end of the process when the, you know, the initial fact finding has been reviewed and now it's settled? What's the clearly established law that says that the first instant, then it's Brady? Your Honor, in terms of looking to what is a clearly established law, I think we should turn to this court's opinions in Carrillo and Tennyson. And Judge Collins, you appropriately identified the fact patterns in those two cases, but I think just like those cases and looking at the record in the light most favorable to plaintiff, we know that as early as June 27th, 2016, which is... Or 2015, which is a couple months before Ms. Salazar's criminal trial, that the final factual investigation has been completed for this Professional Standards Bureau report. That means that those findings can't be changed. You can look at Commander Collins' testimony on that. He's the former professional, head of the Professional Standards Bureau. So the disciplinary review board that then goes through this before it could be appealed, they can't change, set aside, or vacate those findings? According to Commander Collins, no, Your Honor. And so I think that's a key point of distinction between plaintiff's position and the defendant's position here. Once that factual finding is made by investigators at the Professional Standards Bureau, that's a final factual determination. Now, there's a few... So what's the point of the appeal? If the facts are final and can't be set aside and challenged, what are the other layers of review for? Certainly, Your Honor. So the Professional Standards Bureau for the City of Phoenix doesn't make disciplinary findings. They make factual conclusions and they determine whether or not the policies have been violated or an officer has done something wrong. Discipline is actually held by the Chief of Police. There is a disciplinary review board which the Chief of Police uses, but the disciplinary review board is a separate process. So whether or not an officer has violated policy, that's already been determined by the Professional Standards Bureau. The Chief of Police then determines what discipline, if any discipline, should relate back to the misconduct and an officer has the inability to appeal the discipline. For example, let's say that they violated policy and were terminated. Maybe the disciplinary review board disagrees the termination was the appropriate discipline for the misconduct, but there wouldn't be a question, Your Honor, as to whether or not misconduct occurred. And I think that that's a key fact here in this case is that as of June, so we're talking months before Ms. Salazar's trial, Officer Armour knew that those factual findings had been confirmed by the PSB, meaning that those factual determinations were not going to change in a disciplinary review process. Do we have to determine to support what you're arguing right now that Officer Armour had a personal responsibility to disclose the disciplinary findings? No, Your Honor. The test under clearly established is objective. It's not a subjective inquiry that looks at Officer Armour's state of mind. In fact, if we look at Carrillo, Carrillo says, are the facts sufficiently clear that every reasonable official would have understood that what he's doing violates that right? If we look back at Judge Bolton's order, she appropriately determined that there can be an inference made that Officer Armour being a 12-year veteran of the City of Phoenix Police Department, that any official in his position would know that misconduct going to his dishonesty before he testifies as, and I think this is critical as well, Your Honors, the key witness in a criminal trial should have turned that information over at some point before the trial. And if I might, Your Honors, I would like to quote to Tennyson, and I think Tennyson makes clear in thinking about this situation, when should impeachment material be turned over? Well, that might be difficult to discern, but clearly it should be turned over at a time when it's of use to the criminal defendant. Here, as the city concedes, Ms. Alizar did not have this material prior to trial, and it was little use to her because she didn't have it at trial. So going back to this objective test, I would also say that this court has confirmed in decision after decision, like Carrillo and Tennyson, that the right to impeachment material as required by Brady is clearly established and has been since at least 1984. That's because for the legal principle to be clearly established, it is not necessary that the very action in question has previously been held unlawful, but rather that in the light of preexisting precedent, that the unlawfulness is apparent. Can I ask another question about this process? Yes. So when he is served with the disciplinary notice in November, if he had appealed, what exactly would have been the process? And would that process have been able to set aside the June factual findings? Your Honor, I don't work at the City of Phoenix Police Department, but I've learned a lot about the City of Phoenix Police Department through this case. And I can tell you that it's my understanding that in my depositions of Chief Williams at the time and of Commander Collins, who is the PSB commander, that a disciplinary review board for the City of Phoenix cannot change factual findings in a PSB report. No, no, no. I'm not talking about the disciplinary review board because that's, as I understand it, the part in September. So when he's served, it's gone through the disciplinary review board and then the disciplinary notice is served in November. And then he had 14 days to appeal, which he didn't. If he had filed that appeal, could he then have challenged in that appeal the factual findings in June? It's my understanding that he couldn't. He could only challenge the discipline that was merited out as a result of the misconduct. Where would he have been appealing to? Your Honor, he would have been appealing to that disciplinary review board panel. Now I'm very confused because I thought the findings are made, it goes to the disciplinary review board and then they issued the notice and then he appeals back to the board? So, Your Honor, breaking it down, the PSB investigation, there's a final determination by PSB, correct? After that, discipline is determined by the chief of police, though sometimes that's delegated to other levels of command within the City of Phoenix Police Department. Once discipline is issued, Officer Armour can appeal, and I'm assuming, well, based on the record, he can appeal to a board, but he's appealing the discipline found by that higher chain of command. It's very possible, Your Honor, that someone could be found to have engaged in misconduct in a PSB investigation, but not be disciplined. And in fact, that has happened previously. If we look at this case and the record in this case, this isn't the first time that there were allegations of misconduct against Officer Armour. This is the first time that allegations of officer misconduct resulted in discipline. Your Honors, I want to go back briefly to the MCAO letter and talk about that. First off, in terms of MCAO setting policy, that's in contradiction with Chief Williams' own deposition testimony, which confirms that she sets PPD policy and that she's also responsible for implementing training. Is the county, Maricopa County, a party? Your Honor, they are not a party. They were dismissed. By voluntary agreement or? No, they were dismissed on a motion to dismiss, Your Honor. You're not appealing that, obviously. I'm not appealing that finding by Judge Bolton, no. So the only Monell theory is a training theory. It's not that the official policies to delay the communication are themselves. What causes the constitutional violation? Initially, Your Honor, we had pled both of those theories. The theory that Judge Bolton has allowed and said that there are material fact disputes worthy of going to trial are on the failure to train. And that was a result of finding that it's a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations as this court noted in Long Beach County of Los Angeles. OK, so the other theory was dismissed and, you know, that's something you could review if this ever goes to a final judgment. Correct, Your Honor. Going back briefly, though, we talked about the Maricopa County Attorney's Office involvement in professional standards. And I want to point out this is supplemental record at 150. This is the letter from Maricopa County Attorney's Office on June 20th, 2014, to PPD reminding them of their Brady disclosure obligations. So I just want to clarify that it's not a letter that happened in 2020. The letter in 2020 from MCAO mirrors a letter that they've sent back in June, on June 20th, 2014. Your Honor, I see that my time is winding down here, so I will close. Ms. Salazar's right to a fair trial by receiving impeachment material was clearly established at the time Officer Armour suppressed the PSB report. Moreover, there is no neat issue of law for this court, and the Minnell claim should not be reviewed at this time. Accordingly, Appellee Frances Salazar respectfully asked this court to uphold the district court's denial of summary judgment. Thank you, Your Honors. Thank you, Counselor. We'll hear rebuttal now. So can you address this issue about whether the factual findings could have been overturned after they were issued in June by any of the remaining phases of the process? Assistant Chief Cullen's testimony was that they cannot. That they cannot. Correct. So, well, I mean that, and even if he had taken an appeal in November, to whom would the appeal have been? The Civil Service Board. And would they have been able to overturn those findings? It's my understanding that they can. They have the authority to do that, but looking at the record, John, Assistant Chief Cullen's testimony was that the factual findings will not be disturbed. Well, if the factual findings can't be disturbed, it's hard to see how the rest of the process is very relevant, because it's the fact that is the Brady material and not whether he's going to get any particular punishment. Right. And that's why I think the county attorney's office subsequently instructed the city to make the disclosure at an earlier time once the findings are complete. But the clearly established doesn't go just to the timing issue. But it's one thing to say it's not clearly established. If the facts are not, are potentially up in the air and the issue is clearly established that the initial facts need to be disclosed. But if the facts are done and the facts are that he lied and he lied a lot, then I don't see why any of the rest of the process is terribly relevant. And it's pretty clear that someone who lies and then gets on the stand that that's Brady Jiglio is to that person. He disputes that he lied. I know, but the factual findings were made and you've now I understand that review. I understand that. But that's one of the benefits to the municipality making the disclosures instead of leaving that to the officers. Police officers aren't lawyers. Police officers have different skill sets. And so the responsibility for making these disclosures has been delegated. It's been taken off of the officer's plate and delegated to a department within the police department, which is how it's done all over the country. That is unrefuted. Their expert did an expert disclosure or I'm sorry, a rebuttal disclosure and did not refute that in our experts report that this is the common practice. And if you look at the letter that Mr. Rundle was discussing, it's Exhibit 41 to Ms. Salazar's statement of facts. The letter from the county attorney dated June 20th, 2014, reminding of the disclosure obligations under Brady states that it reminds all departments, or I'm sorry, we are requesting all police agencies to notify us of adverse findings, not police officers. Police officers never got this letter. There's no evidence Officer Armour ever got this letter. That's because the responsibility lies with the Professional Standards Bureau. That is what, it is not clearly established that a police officer has to personally make this disclosure of sustained findings of misconduct where that has been delegated to a specific department within the police department. If a police officer could be held liable in this case, you're going to, you would have thousands of cases. I'll let you go over. I think we have your argument and I appreciate the arguments of both counsel this morning. In the case of Salazar versus Phoenix, will be submitted for decision.
judges: HAWKINS, COLLINS, Murphy